·NEW-YORK,
Dec. 1822.

The People *vs.* Henry M'Fall. *Grand Larceny.*

THE prisoner was charged with stealing from Robert Clench, his brother-in-law, on the 1st day of December, 1822, a gold watch and chain, seals, and a silver coffee-pot, &c. amounting altogether to $142.

It appeared by the testimony of the prosecutor that he resided on the Bloomingdale Road, and the prisoner lived in the same house, or at least, made it his home.

He took the articles among others, and sold them at different brokers' offices and auction stores in the city, or pawned them at those places.

The People
*vs.*
Henry M'Fall

The jury may convict upon the confession in the examination of the prisoner only ; but it is desirable to have other testimony, where it can be had.

Mr. Clench soon missed the articles. He advertised them. Mr. Angel Jacobs, who keeps a broker's office, bought the coffee-pot, and upon observing the advertisement, gave information to Mr. Clench that he had bought the coffee-pot of a man who called himself William Johnson, and offered Mr. Clench to surrender the article, if he would give him the name of the person who sold it to him.

Mr. Clench was anxious to obtain his property, but seemed averse to give the name of his brother-in-law. Jacobs refused to deliver the article until he complied with his request. A suit was commenced against him for the value of the pot, by Mr. Clench, which was abandoned, and this prosecution resorted to, to obtain it.

The prisoner admitted in his examination, that he had taken the articles and sold them in the manner above stated.

He was defended by *Dr. Graham* and *N. B. Graham,* who contended that the prosecutor and his wife had conspired with the prisoner, that he should take articles out of the house and sell and pledge them for the use of the prosecutor, and then charge the prisoner with stealing them,

NEW-YORK,  in order to get the goods back, or  the  price of  them ;  and
Dec.  1822.  offered to show  the  needy circumstances of the prosecutor
The People  at the time.

The People
vs.
HenryM'Fall  *Maxwell, District Attorney,* addressed  the  jury,  and
——————  feelingly observed,  the  evidence was of such a nature as
'to be irresistable : that the confession of the prisoner was
full and satisfactory : that  no  evidence  had  been  offered
that could  induce  the court and jury to believe, that any
improper connexion existed  between  the prisoner and the
prosecutor : that it was unreasonable and  absurd  to  sup-
pose  a  conspiracy  among  these  people, as stated by the
counsel for the prisoner, in the absence of testimony.

*By the Court.*—" The prisoner is charged with stealing
" a number of articles, some of them  of  very considerable
" value.·  The evidence before us has been confined to one
" only, to wit, the silver coffee-pot.  But by the examina-
" tion of the prisoner it appears he  has confessed the lar-
" ceny of  all  the articles mentioned in the indictment.
" The law upon the subject of examinations is that a pris-
" oner may be convicted upon that species of proof alone.  It
" is, however, at all times advisable to have other testimony
" if it can be procured.  It is for the jury to say, under all
" the circumstances of the case,  whether  the prisoner is
" guilty of grand* or petit larceny."

The jury found the prisoner guilty of grand larceny.

*Note.—It is of primary importance in the administration of criminal
justice, that the laws be certain and  defined, that as little  power be
left to the discretion of the court and jury, as the nature of those laws
will admit.  It requires no stretch of skill to discover that in  propor-
tion to the certainty and  fixed principles of a law in  the same  ratio
will that law be respected and obeyed.
That a jury not  only decide upon  the law, but also determines the fact

is a principle too well settled to be denied. It is however, an aggre- NEW-YORK,
gate of power too important to be trifled with. With respect to their Dec. 1822.
discretion in deciding the value of goods, on a charge of larceny, The People
whether the crime is petit or grand larceny, there can be no doubt *vs.*
that they are bound to those salutary rules adopted in other cases for Henry M'Fall
the regulation of their judgment.

And although a feeling of tenderness and mercy may, and should exist
in the minds of virtuous jurors for the fate of a criminal, yet it should
never extend to the length it has been intimated it has been extended,
particularly as it relates to charges of grand larceny.

Sir Samuel Romilly, in his observations on the criminal law of Eng-
land, p. 65 and 66, with great learning and accuracy, says, " The lat-
" itude which jurors allow themselves in estimating the value of prop-
" erty stolen, with a view to the punishment which is to be the conse-
" quence of their verdict, is an evil of very great magnitude. Noth-
" ing can be more pernicious, than that jurymen should think lightly
" of the important duties they are called upon to discharge, or should
" acquire a habit of trifling with the solemn oaths they take. And
" yet ever since the passing of the acts which punish with death the
" stealing in shops or houses, or on board ships, property of differ-
" ent values which are there mentioned, juries have, from motives of
" humanity, been in the habit of frequently finding, by their verdicts,
" that the things stolen were worth much less than was clearly prov-
" ed to be their value. It is held, indeed, by some of the judges,
" (whether by all of them, and upon all occasions, I am not certain,)
" that juries in favor of life may fairly, in fixing the value of the pro-
" perty, take into their consideration the depreciation of money which
" has taken place since the statute passed ; or, in the words of Mr.
" Justice Blackstone, may reduce the present nominal value of money
" to its ancient standard.

*He then goes on to specify a number of cases where this system has been acted
upon, as follows :*

" In the year 1731—2, which was only thrity two years after the act of king
William, and only sixteen after the act of Queen Ann, a period during
" which there had scarceely been any sensible diminution in the val-
" ue of money ; it appears from the sessions' papers that, of thirty-

NEW-YORK,
Dec. 1822.

The People
vs.
Henry M'Fall

" three persons indicted at the Old Bailey, for stealing privately in
" shops, warehouses, or stables, goods to the value of five shillings
" and upwards, only one was convicted, twelve were acquitted, and
" twenty were found guilty of theft; but the things stolen were found
" to be worth less than five shillings. Of fifty-two persons tried in
" the same year at the Old Bailey, for stealing in dwelling-houses,
" money or other property, of the value of forty shillings, only six
" were convicted, twenty-three were acquitted of the larceny, but
" saved from capital punishment by the jury stating the stolen prop-
" erty to be of less value than forty shillings.

" In the following years, the number do not differ very materially from
" those in the year 1731.

" Some of the causes which occurred about this time, are of such a kind,
" that it is difficult to imagine by what casuistry the jury could have
" been reconciled to their verdict. It may be proper to mention a
" few of them. Elizabeth Hobbs was tried in September, 1732, for
" stealing in a dwelling house, one broad piece, two guineas, two
" half guineas, and forty shillings in money. She confessed the fact,
" and the jury found her guilty, but found that the money stolen was
" only worth thirty-nine shillings.

" Mary Bradley, in May, 1732. was indicted for stealing in a dwelling
" house, lace which she had offered to sell for twelve guineas, and
" for which she had refused to take eight guineas; the jury, howev-
" er, who found her guilty, found the lace to be worth no more than
" thirty-nine shillings.

" William Sherrington, in October, 1732, was indicted for stealing private-
" ly in a shop, goods which he had actually sold for £1 5s. and the
" jury found that they were worth only 4s 10d.

" In the case of Michael Allon, indicted in February, 1733, for privately
" stealing in a shop, forty three dozen pairs of stocking, value £3
" 10s.; it was proved that the prisoner had sold them for a guinea and
" a half to a witness who was produced on the trial; and yet the jury
" found him guilty of stealing what was only the value of 4s. 10d.

" In another case, that of George Dawson and Joseph Hitch, also indict-
" ed in February, 1773, it appeared that the two prisoners, in com-

" pany together at the same time, stole the same goods privately in a

" shop, and the jury found one guilty to the amount of 4s. 10d. and

" the other to the amount of 5s; that is, that the same goods were at

" one and the same moment of different values. This monstrous

" proceeding is accounted for by finding that Dawson, who was capital-

" ly, had been tried before at the same sessions for a similar offence,

" and had been convicted of stealing to the amount only of 4s. 10d.

" The jury seem to have thought, that having had the benefit of their

" indulgence once, he was not entitled to it a second time ; or in

" other words, that having once had a pardon at their hands he had

" no further claims upon their mercy."

These complaints it is feared, might be made with equal reason in New
York.

The following cases among a host of others, have been selected.

John Williams's case, City-Hall Rec. vol. 1. p. 5.   Williams was indict-
ed for grand larceny, for stealing a great coat and a pocket book con-
taining seven or eight dollars. The jury found him guilty of petit
larceny.

Thomas Smith's case, City-Hall Rec. vol. 1. p. 52. The prisoner was
indicted in March term, 1816, for a grand larceny of half a piece of
Florence silk, and two shawls, the property of David Ayres and Eze-
kiel Halstead, notwithstanding it was a flagrant case, and the prop-
erty stolen of very considerable value, he was found guilty of petit
larceny only.

George Kelly's case, City-Hall Rec. vol. 3. p. 153. Kelly was indicted
for grand larceny, October term, 1818, for stealing a watch of the
value of forty dollars, the property of John Wescott. This was also
a flagrant case ; yet the jury found him guilty of petit larceny.